CLAY, Circuit Judge,
dissenting.
Petitioner’s counsel rendered ineffective assistance of counsel in violation of the Sixth Amendment by failing to adequately *972 investigate and prepare mitigating evidence for the penalty phase of Petitioner’s trial. I would therefore vacate Petitioner’s sentence and remand for proceedings consistent with this opinion.[1]
To establish that counsel was ineffective at the penalty phase under Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Petitioner must show that: (1) counsel’s performance was deficient, and (2) the deficiency prejudiced his defense.
I. Trial Counsel’s Deficient Performance[2]
Because the Ohio Court of Appeals analyzed Petitioner’s ineffective assistance claim only under the prejudice prong of Strickland and did not determine whether Petitioner’s counsel’s investigation constituted deficient performance, this Court examines this element of Petitioner’s claim de novo. Rompilla v. Beard, 545 U.S. 374, 390, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005). To demonstrate that counsel was deficient, Petitioner must establish that “counsel’s representation fell below an objective standard of reasonableness,” measured against “prevailing professional norms.” Strickland, 466 U.S. at 688, 104 S.Ct. 2052.
With respect to representation at the penalty phase of capital cases, the Supreme Court has referred to the American Bar Association (“ABA”) Guidelines concerning death penalty cases as “ ‘guides to determining what is reasonable.’ ” Rompilla, 545 U.S. at 387, 125 S.Ct. 2456 (quoting Wiggins v. Smith, 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting Strickland, 466 U.S. at 688, 104 S.Ct. 2052)). See also Bobby v. Van Hook, — U.S. — , 130 S.Ct. 13, 16, 175 L.Ed.2d 255 (2009) (noting that “Restatements of professional standards [such as the ABA Guidelines] can be useful as ‘guides’ to what reasonableness entails ... to the extent they describe the professional norms prevailing when the representation took place”); Hamblin v. Mitchell, 354 F.3d 482, 486 (6th Cir.2003) (noting that the Supreme Court has held that “the ABA standards for counsel in death penalty cases provide the guiding rules and standards to be used in defining the ‘prevailing professional norms’ in ineffective assistance cases”). According to the ABA Guidelines, in capital cases, “investigations into mitigating evidence ‘should comprise efforts to discover all reasonably available mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor.’ ” Wiggins, 539 U.S. at 534, 123 S.Ct. 2527 (citing ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases 11.4.1(C), p. 93 (1989)) (emphasis in original). The Court has further noted that “among the topics counsel should consider presenting are medical history, educational history, employment and training history, family and social history, prior adult and juvenile correctional experience, and religious and cultural influences.” Id. (emphasis omitted).
Although decisions regarding the investigation of mitigating evidence often involve strategic choices, counsel’s strategic decisions must be supported by a “thor *973 ough investigation.” Strickland, 466 U.S. at 690, 104 S.Ct. 2052. When counsel decides to limit their mitigation investigation, their strategic choices made after this limited investigation “are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.” Id. at 691, 104 S.Ct. 2052. Accordingly, “the deference owed to counsel’s strategic judgments about mitigation is directly proportional to the adequacy of the investigations supporting such judgments.” Jells v. Mitchell, 538 F.3d 478, 492 (6th Cir.2008) (citing Wiggins, 539 U.S. at 521, 123 S.Ct. 2527). “In assessing the reasonableness of [attorneys’] investigation, however, a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead ... reasonable attorney[s] to investigate further.” Wiggins, 539 U.S. at 527, 123 S.Ct. 2527. However, the Supreme Court has also instructed that “hindsight is discounted by pegging adequacy to ‘counsel’s perspective at the time’ investigative decisions are made, and by giving a ‘heavy measure of deference to counsel’s judgments.’ ” Rompilla, 545 U.S. at 382, 125 S.Ct. 2456 (quoting Strickland, 466 U.S. at 689, 691, 104 S.Ct. 2052) (citations omitted).
On appeal, Petitioner argues that his trial counsel were ineffective during the penalty phase of his trial in several ways. First, Petitioner maintains that “counsel were ineffective in their mitigation investigation in that they did not talk to most of [Petitioner’s] family.” (Pet-’s Br. at 25). With respect to those family members with whom counsel spoke, Petitioner argues that trial counsel failed to “adequately investigate and prepare” them prior to the mitigation hearing. (Id.) Petitioner also faults trial counsel for relying on a presentence investigation report without performing further investigation.
The record, including the testimony of witnesses during mitigation and the post-conviction deposition of John Schultz, one of Petitioner’s trial attorneys, shows that Petitioner’s attorneys consulted Petitioner’s family, Dr. Darnall, and another mental health expert, Dr. Morrison. They also reviewed the Adult Parole Authority’s presentence investigation report and requested a pre-sentencing psychological examination, although they did not review any of Petitioner’s medical or school records. Schultz testified that, “in hindsight,” he “probably would have hired a mitigation expert to assist him,” (J.A. at 910), but noted that mitigation was “relatively new” and not many lawyers were experienced in it at the time of Petitioner’s trial. (J.A. at 879).
From these sources, counsel knew the following: (1) Petitioner had a history of difficulty in school and was a “slow learner” with a low I.Q. and at times had trouble communicating with people; (2) Petitioner was generally a nice and non-violent person who helped family around the house and got along well with children; (3) Petitioner had a poor relationship with his step-father and had at one point stabbed him when his stepfather attempted to choke both his mother and sister in a drunken rage; (4) Petitioner had several juvenile incidents, including a knife fight and, as an adult, had numerous convictions for theft, assault, breaking and entering, and “drunk and disturbance;” and (5) Petitioner had a history of serious drug and alcohol abuse.
At mitigation, Petitioner’s counsel presented six witnesses, including two detectives who indicated that Petitioner was remorseful and one correctional facility officer who testified regarding Petitioner’s good behavior while incarcerated. Each of these witness’ testimony takes up less than three pages in the sentencing tran *974 script. Although it appears counsel may-have spoken to at least two additional family members, counsel indicated that their testimony was “largely indicative” of the testimony already offered. (J.A. at 1587).
Based on the affidavits submitted by Petitioner’s other family members and acquaintances, however, it appears that trial counsel failed to contact several family members and friends. See Johnson v. Bagley, 544 F.3d 592, 600 (6th Cir.2008) (concluding that counsel’s failure to interview the petitioner’s mother constituted deficient performance because the interview could have provided further information as to how her own drug addiction affected the petitioner’s childhood). The record fails to indicate that Petitioner’s counsel asked for additional names from Petitioner’s mother, sister, and brother-in-law, or from state officials who were familiar with Petitioner as a result of Petitioner’s contact with the criminal justice system. See id. (highlighting counsel’s failure to ask witnesses who were interviewed for additional sources of mitigation witnesses in finding that counsel was deficient). Nor did counsel seek to contact officers who were involved in the preparation of Petitioner’s pre-sentence report or his case more generally.
Counsel also did not seek the court’s permission to retain a mitigation expert. While counsel’s failure to use a mitigation expert itself does not constitute deficient performance, their failure to obtain the information that a mitigation expert would gather — information regarding Petitioner’s childhood, early school years, substance abuse, interactions with family, and contact with the criminal justice system— demonstrates the deficiency of counsel’s performance. See Jells, 538 F.3d at 495 (citing Williams v. Taylor, 529 U.S. 362, 397, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)) (concluding that counsel had “an obligation to fully investigate the possible mitigation evidence available”). “Counsel’s decision not to expand their investigation” and to rely on the pre-sentence investigation report to fulfill this obligation to investigate was objectively unreasonable. Wiggins, 539 U.S. at 524, 123 S.Ct. 2527.
Trial counsel chose not to conduct an independent investigation into Petitioner’s medical and academic background, instead choosing to rely on the pre-sentence report. Counsel’s own observations of Petitioner and their knowledge of his significant alcohol and drug abuse, however, should have prompted them to investigate his medical records. Like the information presented in the records provided to counsel in Wiggins, the report of Dr. Darnall and counsel’s own knowledge should have prompted them to further investigate Petitioner’s medical records and history of drug use, particularly since their mitigation strategy was to show the profound influence drug and alcohol abuse played in Petitioner’s life.[3] See Wiggins, 539 U.S. at 524, 123 S.Ct. 2527. In light of the broad spectrum of mitigation evidence Ohio law permits a defendant to present, the fact that counsel focused only on Petitioner’s family members in locating potential mitigating evidence constitutes an abject failure to fully investigate the possible mitigation evidence available. See id.
Accordingly, trial counsel’s performance during the mitigation phase fell below *975 “prevailing professional norms” and constituted deficient performance under Strickland.
II. Prejudice Prong of Strickland
Because the Ohio Court of Appeals reached the merits of the prejudice prong of Petitioner’s ineffectiveness claim, we review this prong under the deferential standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996) (“AEDPA”) to determine whether the state court unreasonably applied Strickland and related cases to Petitioner’s claim. Under Strickland, Petitioner “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Thus, counsel’s ineffective performance “does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.” Id. at 690, 104 S.Ct. 2052. In the specific context of a capital case, a petitioner establishes prejudice when “there is a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs the evidence — would have concluded that the balance of aggravating and mitigating factors did not warrant death.” Id. at 695, 104 S.Ct. 2052. The Supreme Court has directed courts to “evaluate the totality of the available mitigation evidence — both that adduced at trial, and the evidence adduced in the habeas proceeding.” Williams, 529 U.S. at 397, 120 S.Ct. 1495.
At the penalty phase of the trial, Petitioner’s counsel presented six witnesses in mitigation. A sergeant at the Mahoning County Jail testified that Petitioner had not violated any rules while incarcerated. Two officers in the Youngstown Police Department who were present at Petitioner’s confession testified that Petitioner appeared remorseful during his confession. Petitioner’s mother and sister testified that Petitioner was a slow learner, had trouble with drugs and alcohol, had no relationship with his father, and had a troubled relationship with his step-father.[4] In addition, they testified that Petitioner was a nice and non-violent person, gave the family money that he earned while in the Job Corps, and was religious. Petitioner’s brother-in-law testified that Petitioner was not violent, helped around the house, and helped his son who had a learning disability. Dr. Darnall, the psychologist who performed the § 2929.03(D)(1) examination following trial, submitted a report to the court and also testified during mitigation. According to the report, Petitioner sustained several head injuries in his youth, including a hospitalization for a fractured skull at age twelve, a Full Scale I.Q. of 82 corresponding to the 12th percentile, and a reading level equivalent to grade 7.5. In addition, Dr. Darnall testified that Petitioner had a chronic history of abuse of both alcohol and polysubstances, which qualified as a mental disorder.
During the state post-conviction proceedings, Petitioner’s counsel presented testimony and affidavits from a number of witnesses who did not testify during trial, including Petitioner’s former live-in girl *976 friend, his step-mother, a second sister, a physician, and state officials involved in Petitioner’s case. This testimony largely focused on the severity of his drug abuse, the effect alcohol and drugs had on his behavior, the possible effect of head injuries, a forceps delivery and poor nutrition on his brain, his good behavior diming previous incarcerations, and the greater role that his co-defendant played in the crime.
Noteworthy among the additional evidence presented during post-conviction proceedings were affidavits of state officials involved in the prosecution of Petitioner’s case. Gary Trammel, the parole officer who prepared the pre-sentence investigation report, stated that he had supervised Petitioner and his brothers for several years and that Petitioner never gave him any problems. According to Trammel, Petitioner was not violent and “this crime was ... totally out of character for him. [Petitioner] was a person who just could never get his act together. Drugs and alcohol were the major factors for all the trouble that he would get himself into.” (J.A. at 798). He noted that Petitioner always did well while incarcerated and under supervision. Trammel further stated:
In preparing the presentence report, I could not personally put down a death sentence recommendation. I still do not think that a death sentence is the appropriate punishment for [Petitioner], The death-sentence recommendation was put in the presentence report pursuant to prosecuting attorney Gary Van Brocklin.
(J.A. at 799). As with other post-conviction affidavits, Trammel noted that he was available and ready to testify, but that [Petitioner’s] trial attorneys never contacted him regarding “[his] opinions as to [Petitioner’s character] or [his] recommendation for a sentence other than death.” (Id.) In addition to Trammel’s affidavit, the prosecuting attorney, Gary Van Brocklin, submitted an affidavit stating his feeling that “Melvin Green planned the aggravated robbery and that [Petitioner] was á follower.” (J.A. at 804).
Based on the testimony and affidavits submitted during post-conviction proceedings, Petitioner argues that he was prejudiced because his trial counsel failed to present important mitigating evidence. While much of the evidence discovered during post-conviction proceedings did not differ dramatically in subject matter or persuasive value from the evidence presented at sentencing, the testimony of Officer Trammel would have been reasonably likely to affect the sentencer’s judgment as to whether death was warranted. At mitigation, counsel presented the testimony of three state officials — a guard at the prison where Petitioner was housed who testified to Petitioner’s behavior while incarcerated, and two officers present during Petitioner’s confession who testified that Petitioner appeared remorseful and took responsibility for his actions. Counsel did not present the testimony of any officers who knew about Petitioner’s background or character as a result of Petitioner’s previous contact with the criminal justice system, nor did they present the testimony of any officers who were closely involved in the preparation of Petitioner’s case. Had counsel interviewed the parole officer who prepared the pre-sentence report rather than simply relying on the report without investigation, they would have discovered that Trammel was prepared to testify on Petitioner’s behalf as to why he did not think death was warranted. The source of this testimony — the fact that it would have been from a law enforcement officer *977 charged with preparing the ease against Petitioner — is crucial. Testimony about Petitioner’s background or character from his family members or doctors may not have had the same effect on the sentencer as testimony from an officer involved in his prosecution. Rather than being cumulative, such supportive testimony from Trammel would have “presented] a more sympathetic picture of [Petitioner]” that could have resulted in a finding of prejudice. Jells, 538 F.3d at 500.
Accordingly, the Ohio courts unreasonably applied Strickland by finding that there is not “a reasonable probability that, absent the errors, the [three-judge panel] ... would have concluded that the balance of aggravating and mitigating factors did not warrant death.” Strickland, 466 U.S. at 695, 104 S.Ct. 2052.
CONCLUSION
Because counsel’s investigation into mitigating evidence was deficient and there is a reasonable probability that, absent the insufficient investigation, the sentencer would have concluded that Petitioner should not have been sentenced to death, I would vacate Petitioner’s sentence and remand for proceedings consistent with this dissent. I would leave Petitioner’s conviction undisturbed.

. Petitioner has failed to make a sufficient showing on his claims that the state trial court’s failure to conduct a competency hearing violated his due process rights and that the state trial court’s refusal to consider mitigating evidence violated his Eighth or Fourteenth Amendment rights. Thus, this dissent will not address these claims.

. Because I agree with the majority that Petitioner's claim of ineffective assistance of counsel is not procedurally defaulted — except as to Petitioner's claim that counsel was ineffective for failing to hire a toxicologist or pharmacologist, which is not at issue here — I have proceeded directly to the merits of Petitioner’s claim.

. In addition, defense counsel’s presentation at trial failed to reflect Petitioner’s history of drug and alcohol abuse. Instead, it consisted mainly of family and detectives noting that Petitioner was a good person who helped his family and was just "slow.” Significantly, the probation officer and Petitioner's former girlfriend, both of whom testified at Petitioner’s post-conviction proceedings, would have provided the information regarding the significant influence of alcohol in Petitioner's life.

. Specifically, they described an altercation that occurred on Christmas, which resulted in Petitioner stabbing his step-father. Petitioner’s step-father had returned from drinking and, after Petitioner’s older sister talked back to him, he began choking her. When Petitioner’s mother interfered, Petitioner's stepfather directed his anger towards her, attempting to choke Petitioner's mother. To stop his step-father, Petitioner stabbed his step-father in the shoulder with a kitchen knife.